## Perryman v. Allen.

*Action for Contribution, to recover Money paid under Contract between Creditors of Insolvent Debtor.*

*Validity of contract for forbearance of proceedings in bankruptcy.* — A creditor who has received from his debtor a payment or preference which is offensive to the provisions of the bankrupt law, and on which other creditors might institute proceedings under that law against the debtor, may lawfully contract with them for the forbearance of such proceedings ; such a contract is not contrary to public policy, nor violative of any provision of law.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. JOHN ELLIOTT.

This action was brought by James Allen, against Erastus S. Perryman, and was commenced on the 5th December, 1870. Its object was to recover from the defendant his aliquot proportion (alleged to be $352) of a judgment which Garnhart, Whitaker & Sons, and others, had recovered against said Allen, Perryman, and others, and which the plaintiff had paid in full under execution. This judgment was rendered under the following circumstances : Timberlake & Allen (a firm of which the plaintiff was a member), Perryman, Roberts & Co. (a firm of which the defendant was a member), and several other mercantile partnerships in Mobile, who were creditors of Parker, Lake & Co., becoming uneasy about the condition of their said debtors, in November, 1867, made settlements or compromises of their respective claims ; and anticipating that other creditors might set aside these settlements, by instituting proceedings in bankruptcy against said Parker, Lake & Co., they entered into the following written agreement among themselves : —

" Mobile, March 14th, 1868. We, the undersigned, do hereby authorize and appoint W. T. Marshall, Leroy Brewer, and Erastus S. Perryman, to act as our agents, as they may act for themselves, in relation to the matter of settlement made

by Messrs. Parker, Lake & Co. with us, in November last, for amounts then due us; we agreeing to pay them, in proportion to the amounts settled by us, our part of what amount they may deem necessary or expedient to pay out to other parties holding claims against Parker, Lake & Co., to prevent their filing petitions to place them in bankruptcy, which act would subject us to heavy loss; a full exhibit of their action in the premises to be made to each of us on the first day of June next."

Acting under this authority, the said trustees, Marshall, Brewer, and Perryman, agreed to pay two thousand dollars to Garnhart, Whitaker & Sons, and other creditors of said Parker, Lake & Co., in consideration of their forbearance to institute proceedings in bankruptcy against their said debtors; and a part of this sum seems to have been paid. Afterwards, Garnhart, Whitaker & Sons, and the other creditors to whom the promise was made, brought a joint action against all the parties who had signed the agreement above set out, to recover the balance remaining unpaid; and they recovered a judgment by default against all the defendants, for $722.34. This judgment was paid by the plaintiff in this action, who then sued the defendant for his proportionate share of the amount. The court below, in its rulings on the pleadings and evidence, and in its instructions to the jury, held that the agreement was contrary to the provisions of the bankrupt law, and against public policy, and that the plaintiff could not recover in this action; and these several rulings, to which the plaintiff excepted, are now assigned as error.

J. L. SMITH, for appellant. — 1. The contract of 14th March, 1868, was not violative of any state law. A debtor, in failing circumstances, may lawfully pay one creditor in preference to another, even though the known effect of the transaction may be to hinder or defeat the other creditors. *Young* v. *Dumas*, 39 Ala. 60; *Crawford* v. *Kirksey*, at the June term, 1872, and authorities there cited.

2. The said contract is not void under the provisions of the bankrupt laws. Those laws do not require a creditor to put his failing or insolvent debtor into bankruptcy. They confer a privilege, as to the institution of proceedings in bankruptcy, but do not impose an obligation. A creditor may, in many cases, prefer to rely on the integrity and business capacity of his debtor, rather than break up and destroy his business for the small dividend that might be realized from proceedings in the bankrupt court; and any arrangement that they may make with that view, if not obnoxious to the laws of the State, is valid, and can only be set aside in the bankrupt court.

Even the debtor himself may remain passive, and is not required to institute proceedings in bankruptcy. *Wilson* v. *City Bank of St. Paul*, reported in Chicago Legal News, January 31, 1874. The contract, then, was voidable only, and the question of its validity could only be raised in the bankruptcy court, or in proceedings instituted by the assignee in bankruptcy. *Seaman* v. *Stoughton*, 3 Barb. Ch. 344; *Dodge* v. *Sheldon*, 6 Hill, 9. The assignee is vested with all the rights of the bankrupt, and is the trustee of all his effects, for the benefit of all his creditors. When he is barred, the proving creditors are barred. They could not sue in their own names, but only through the assignee. The decree in bankruptcy is in the nature of a statutory judgment, and execution for the benefit of such creditors as may choose to avail themselves of it, by proving their claims, and coming in through the assignee. *Carr* v. *Hilton*, 1 Curtis C. C. 230; *Buckner* v. *Calcott*, 28 Miss. 591; 3 McL. 571, Bump on Bankruptcy, 330; *Hoyt* v. *Fuel*, 4 Bank. Reg. 34; 2 Howard, 209; 20 Howard, 119.

3. The plaintiffs' right to recover grows out of a joint judgment, which was rendered on a joint contract. The judgment was by default, and it is conclusive as to the question of the validity of the contract. The defendant is estopped by it, and cannot now introduce evidence to impeach it collaterally. *Hopkins* v. *Shelton*, 37 Ala. 312; *Bobe's Heirs* v. *Stickney*, 36 Ala. 494; *Mervine* v. *Parker*, 18 Ala. 241; 42 Ala. 632; 2 Porter, 262. The contract between the parties having been executed, the courts will not now unravel the transaction, to discover whether there was any illegality in its origin. 98 Mass. 167; 16 Wallace, 499; 2 Wallace, 78; 3 T. R. 418; *Owen* v. *Davis*, 1 Bailey, 315; *Armstrong* v. *Toler*, 11 Wheaton, 274; 1 Bos. & P. 3; 17 Howard, 232; 7 Vesey, 473.

L. GIBBONS, *contra.* — 1. The agreement between the parties, which is the foundation of the action, is void on grounds of public policy. " Agreements in contravention of the policy of the insolvent or bankrupt acts, and prejudicial to the creditors at large, are not valid; as for instance, contracts whereby it is attempted to secure to a particular creditor a superior claim, and a preference to the future property of the insolvent, or a greater share of the dividends of a bankrupt's estate, in fraud of other creditors; or contracts in consideration of withdrawing an opposition to the discharge of an insolvent, or an agreement to omit the debt of a creditor from the insolvent's schedule." Chitty on Contracts, 7th Amer. ed. 669. To the same effect are the following authorities: 1 Parsons on Contracts, 265, note *a*, 392, note *d;* 2 Ib. 252; 4 M. & W. 361; 1 Starkie, 329; *Bryant* v. *Christie*, 2 E. C. L. 412; Story on

Contracts, vol. 1, pp. 545–6, 674–5, 706; 4 E. D. Smith, N. Y. 466; 11 Cush. (Mass.) 70; 14 Penn. St. R. (2 Harr.) 18; 15 La. Ann. R. 519; 11 Iowa, 133; 1 Foster, N. H. 128; 21 Vermont, 184, 199, 456.

2. There is a recognized distinction between executed and executory contracts; but it cannot help the plaintiff in this case. The action is in affirmance of the illegal contract, and therefore cannot be maintained. *White* v. *Franklin Bank*, 22 Pick. 181–84; 2 Parsons on Contracts, 252.

BRICKELL, J. — We will assume, that it can be fairly collected from the agreement described in the pleadings, that the contracting parties had received from their debtors, Parker, Lake & Co., payments or preferences, which they could not retain against an assignee in bankruptcy, and the making or giving of which subjected the debtors to involuntary bankruptcy, at the suit of a creditor not participating in them. We will further assume, that the object of the agreement was to prevent the institution of proceedings in bankruptcy, so that such payments or preferences could be preserved and retained. Proceeding on this assumption, the conclusion we have reached is, that the agreement is valid, not offending public policy, or violative of law. To render the agreement invalid, we must be prepared to pronounce, that the payments or preferences, which the contracting parties had received, were made or given and accepted in violation of law. This we cannot declare, for, in the absence of the provisions of a bankrupt law, the right of a debtor to prefer one creditor to another, either by payments, or assignment, sale, or conveyance of property, is as absolute and unqualified as his power of disposing of his estate. The only qualification of this right is, that the appropriation must be absolute to the payment of the preferred debts, reserving no benefit to the debtor. That the debtor is in failing circumstances, or actually insolvent, and that the favored creditor has full knowledge of his condition, and obtains a preference which deprives all other creditors of the means of payment, does not affect or qualify the right. A reference to the numerous decisions of this court affirming this principle, commencing at an early day, is unnecessary, for they are familiar to the profession, and are recognized as just expositions of the law. A debtor may be actually insolvent, and suffer his property to be seized under legal process; or he may confess a judgment in favor of a particular creditor, that his property may be so seized, without offending any other than the bankrupt law; and the seizure, or the judgment, will prevail against all the world, except an assignee in bankruptcy. No creditor can avoid the seizure, or impeach the judgment.

[Perryman v. Allen.]

He may make payments, gifts, grants, sales, conveyances, or transfers of money, or other property, estate, rights, or credits, with intent to give a preference to one or more of his creditors; and the preference will be preserved, except as against an assignee in bankruptcy. This is all offensive to the bankrupt law, and the purpose may be to defeat the operation of that law. Until the jurisdiction of a court of bankruptcy attaches, and a right is founded on its proceedings, the validity of all such preferences is measured by another law than the bankrupt law; and if they do not fall within the prohibitions of the statute of frauds, they must be sustained. It cannot be asserted, that if a creditor contests the validity of such preferences, and seeks to condemn the subject thereof to the payment of his debt, he could invoke the aid of the provisions of the bankrupt law, declaring such preferences void. These provisions of the bankrupt law are designed to secure the main purpose of that law, an equality of distribution among creditors, and to prevent any "race of diligence," whereby one could acquire priority over another. If, in a contest between creditors, involving the validity of such preferences, the one could invoke the aid of these provisions, he would destroy one preference, and substitute another in its stead; thus defeating at last an equality of distribution, — the purpose the law designed to effect. Hence, the authorities seem to be uniform, that payments, sales, transfers, or conveyances of any character, declared void by the bankrupt law, and a fraud upon it, are void only as against persons claiming under proceedings in bankruptcy, or in the course of administration of a bankrupt's estate, in a court of bankruptcy. Hilliard on Bankruptcy, 350, § 27; *Atkins* v. *Spear*, 8 Metc. 490; *Penniman* v. *Cole*, Ib. 496; *Dodge* v. *Sheldon*, 6 Hill, 9; *Burt* v. *Perkins*, 9 Gray, 317; *Beck* v. *Parker*, 65 Penn. 262; *Hawkins' Appeal*, 8 Amer. Law Reg. 205.

When this agreement was made, no proceedings in bankruptcy were pending. The jurisdiction of a court of bankruptcy had not attached. Neither the debtor, nor his estate, nor his creditors were then under the operation of the bankrupt law. The payments or preferences which the contracting parties had received, and which they were solicitous to preserve, were legal, and their right to them was indisputable. We can see no good reason for declaring that it was offensive to public policy, or violative of law, for them to contract to preserve the legality of, and the right to such payments or preferences. A contract contravening the policy or provisions of the bankrupt law is doubtless void; so is any contract to defeat its operation, or prejudicial to creditors at large, or securing one creditor a preference over another, not allowed by

[Perryman *v.* Allen.]

law. Addison on Con. 97. But the law must be of force when the contract is made, or it cannot be affirmed that its policy or provisions are contravened. The examples illustrating the rule, found in the books, show that the rule itself is applied only to contracts made when the policy and provisions of the bankrupt law are prevailing. Thus, a contract to induce a creditor to withdraw opposition to an insolvent's discharge, or to sign a bankrupt's certificate, or not to oppose the granting of such certificate, or to abandon the prosecution of a fiat in bankruptcy, &c., are all void, and are all contracts of necessity made when the bankrupt law is in operation, and the jurisdiction of a court of bankruptcy has attached, to which the debtor and his estate and his creditors are subject. Here, the contract is by creditors who have received payments or preferences, valid under the general law, and which can be avoided only by subjecting them to the operation of the bankrupt law, to contribute such a sum as will satisfy creditors who could institute proceedings in bankruptcy, because of such payments or preferences to forbear such proceedings. The institution of such proceedings rested exclusively in the volition of such creditors. They were under no obligation to institute them. No duty to the public compelled their institution, or their continued prosecution. They were only a remedy given by the bankrupt law, for the collection of their debts, or the appropriation to their satisfaction of a just proportion of the assets of the debtor. They could release, compound, or on any consideration they deemed adequate extinguish the debts, and could, of consequence, contract to waive any remedy given by law for their collection, which is a mere incident to the debts. The interests of creditors may often be promoted by such contracts, rather than by a resort to proceedings in bankruptcy. In their practical operation, such proceedings may have proven dilatory and expensive, "tearing to pieces the estate of the bankrupt," and the " lion's share " of the fragments may be diverted from creditors, to pay the fees of officers of court charged with the administration of the law. It seems to us it would be a harsh rule, that would compel a creditor to resort to such proceedings, and prohibit him from contracting to forbear them, as he can contract to waive any other right or remedy that the law gives him. In our judgment, the law authorizes creditors who have received payments or preferences, offensive to the bankrupt law, to preserve their validity, by paying, or contracting to pay other creditors, who could found on them proceedings in bankruptcy, a consideration to forbear such proceedings.

The rulings of the court below were adverse to this conclusion, and its judgment is therefore reversed, and the cause remanded.